985 F.2d 552
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Alexander C. NAZZARO, Defendant, Appellant.
 No. 92-1448.
 United States Court of Appeals,
First Circuit.
 January 28, 1993
 
 Appeal From the United States District Court for the District of Massachusetts
 Elliot M. Weinstein for appellant.
 Sharen Litwin, Assistant United States Attorney, with whom A. John Pappalardo, United States Attorney, was on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Torruella, Circuit Judge, Brown,* Senior Circuit Judge, and Stahl, Circuit Judge.
 STAHL, Circuit Judge.
 
 
 1
 Defendant-appellant Alexander C. Nazzaro challenges his conviction for violating 18 U.S.C. § 922(g)(1), which makes it unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition ... " Although we affirm the conviction, we do so for reasons different from those asserted by the district court.
 
 I.
 Prior Proceedings
 
 2
 The relevant facts of this case are undisputed. On March 12, 1990, agents from the Federal Bureau of Alcohol, Tobacco and Firearms (BATF), Massachusetts State Police and Barnstable (Mass.) Police Department executed a federal search warrant at the Hyannis home of defendant's mother, where defendant resided. The search yielded five firearms.[1]
 
 
 3
 Nazzaro's subsequent indictment was predicated on the following Massachusetts state court convictions, all of which were punishable by imprisonment for more than one year:
 
 
 4
 1. Assault and battery; Chelsea District Court; February 1977;
 
 
 5
 2. Rape and assault and battery with a dangerous weapon; Suffolk Superior Court; December 1977;
 
 
 6
 3. Assault and battery; Essex Superior Court; October 1978.[2]
 
 
 7
 The case was submitted to a bench trial, prior to which both sides stipulated to defendant's possession of the five firearms listed in the indictment and to his prior convictions. In addition, the parties stipulated that Nazzaro, at the time of his arrest, possessed a valid Massachusetts Firearms Identification Card (FID), by which the Commonwealth authorized him to possess in his home the firearms at issue. See Mass. Gen. L. ch. 140, § 129B.[3]
 
 
 8
 Thus, the sole issue before the trial judge was the efficacy of Nazzaro's defense, in which he sought refuge under the portion of 18 U.S.C. § 921(a)(20) which provides that:
 
 
 9
 Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.
 
 
 10
 Nazzaro argued that the provisions of Mass Gen. L. ch. 140, § 129B which allow a convicted felon to obtain a FID five years after conviction or release from jail, and thereby possess a firearm at home, when taken in conjunction with his possession of a valid FID and the failure of authorities to revoke same, constituted a "restoration of civil rights" within the meaning of 18 U.S.C. § 921(a)(20), thus taking his convictions for rape and assault and battery with a dangerous weapons-the Massachusetts feloniesoutside the reach of federal firearms law. The trial court disagreed, ruling that because possession of a firearm is not a "civil right" in Massachusetts, defendant's possession of the FID and right to possess the firearms at issue cannot constitute a "restoration of civil rights." United States v. Nazzaro, 778 F. Supp. 1, 2 (D. Mass. 1991).
 
 II.
 Discussion
 
 11
 We review de novo the district court's ruling on Nazzaro's status. United States v. Chambers, 964 F.2d 1250 (1st Cir. 1992); See United States v. Haynes, 961 F.2d 50, 51 (4th Cir. 1992) (issue of whether defendant was a convicted felon within the meaning of 18 U.S.C. §§ 921(a)(20) and 922(g)(1) involves a purely legal determination). As noted above, we affirm Nazzaro's conviction. A brief explanation of our reasoning follows.
 
 
 12
 As appellant's counsel essentially conceded at oral argument, a panel of this court recently-and explicitly-blocked the way to Nazzaro's putative safe haven. In United States v. Ramos, 961 F.2d 1003 (1st Cir.), cert. denied, 113 S. Ct. 364 (1992), we were presented with, as we are here, a federal "felon-in-possession" defendant among whose predicate crimes were those categorized as misdemeanors under Massachusetts law. We concluded that
 
 
 13
 an individual convicted of a crime categorized as a misdemeanor under Massachusetts law, ... does not by law forfeit any civil rights. Hence, the proper inquiry here is whether an individual residing in a jurisdiction which does not strip him or her of any civil rights as a collateral consequence of conviction should be deemed, as appellant urges, to have had his civil rights "restored" for purposes of § 922(a)(1), after having served his/her sentence.
 
 
 14
 Like the district court, we believe the answer is no.
 
 
 15
 Id. at 1008.
 
 
 16
 As appellant's counsel recognized, this case is on all fours with Ramos vis-a-vis appellant's Massachusetts misdemeanor convictions.[4] Nazzaro, like Ramos, was stripped of no civil rights as a result of his misdemeanor convictions. Thus, according to Ramos, Nazzaro could not have had any such rights "restored" within the meaning of 18 U.S.C. § 921(a)(20). Bound as we are by prior panel decisions so closely on point, Fournier v. Best Western Treasure Island Resort, 962 F.2d 126, 127 (1st. Cir. 1992), we find, pursuant to 18 U.S.C. § 922(g)(1), that appellant's prior misdemeanors are "crimes punishable by imprisonment for a term exceeding one year." Accordingly, his conviction is affirmed.[5]
 
 
 
 *Of the Fifth Circuit, sitting by designation. Judge Brown heard oral argument in this matter, and participated in the semble, but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).
 
 
 [1]
 The firearms at issue were two shotguns, two rifles and one pistol
 
 
 [2]
 Under Massachusetts law, only the December 1977, rape and assault and battery with a dangerous weapon convictions-number two, above-are considered felonies. See Mass. Gen. L. ch. 265, § 13A; Mass. Gen. L. ch. 274, § 1. While the other convictions are misdemeanors under Massachusetts law, 18 U.S.C. § 921(a)(20)(B) provides that a state misdemeanor is considered a "crime punishable by imprisonment for a term exceeding one year" if it is punishable by more than two years imprisonment. Under Massachusetts law, assault and battery is punishable by a maximum term of two and one half years, thus bringing the two state misdemeanors within the purview of section 922(g)(1)
 
 
 [3]
 Nazzaro received his FID in October 1977, after his first misdemeanor conviction, but prior to his felony convictions. Under Mass. Gen. L. ch. 140, § 129B, the misdemeanor conviction had no legal effect on his ability to obtain the FID, but it could have been revoked by the issuing authority-the Barnstable Police Department-after the felony convictions. For reasons unknown, however, revocation never occurred. In addition, the same statute prohibits a felon from obtaining a FID within five years of conviction or release from jail. There is no dispute that the five-year firearm proscription had expired by the time of Nazzaro's federal arrest and prosecution
 
 
 [4]
 We note that the potential legal effect of Nazzaro's Massachusetts misdemeanor convictions was not extensively argued before, nor relied on by, the trial court, and that we rendered our decision in Ramos subsequent to those proceedings. However, the parties stipulated to the existence of those convictions, and where the key facts are undisputed, we may affirm the district court by grouping those facts " 'along the [proper] matrix.' " Unites States v. Nivica, 887 F.2d 1110, 1127 (1st Cir. 1989) ( quoting United States v. Mora, 821 F.2d 860, 869 (1st Cir. 1987)), cert. denied, 110 S. Ct. 1300 (1990). Thus, we rely on Ramos, as explained more fully, infra, n. 5
 
 
 [5]
 We choose here to rely on Ramos rather than the district court's "civil rights" analysis for two reasons. First, as illustrated above, Ramos is indistinguishable from the case at bar, and thus provides the most direct resolution to the issue on appeal. Second, we are not entirely comfortable with the district court's analysis of the interplay between 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 921(a)(20). Our concern stems from the fact that no other court that has examined this oft-contested issue has used the criterion of whether the state considers firearm ownership to be a civil right as a ratio decidendi. Instead, many courts have used a dual inquiry, initially determining whether the felon's "political" civil rights-to vote, hold office, sit on a jury, etc.-have been restored, and then examining whether and to what extent such restoration curtails his firearm privileges as a result of his felon status. See, e.g., United States v. Driscoll, 970 F.2d 1472 (6th Cir. 1992), cert. denied, 61 U.S.L.W. 3498 (U.S. Jan. 13, 1993) (No. 92-6132); United States v. Cardwell, 967 F.2d 1349 (9th Cir. 1992); United States v. Dahms, 938 F.2d 131 (9th Cir. 1991); United States v. Traxel, 914 F.2d 119 (8th Cir. 1990); United States v. Gomez, 911 F.2d 219 (9th Cir. 1990); United States v. Cassidy, 899 F.2d 543 (6th Cir. 1990); United States v. Coffman, 761 F. Supp. 1493 (D. Kan. 1991). This method of analysis seems most consistent with the language of section 921(a)(20) wherein the civil rights restoration does not save a defendant if such restoration "expressly provides that the person may not ship, transport, possess, or receive firearms."
 The district court relied on United States v. Erwin, 723 F. Supp. 1285 (C.D. Ill. 1989), aff'd, 902 F.2d 510 (7th Cir.), cert. denied, 111 S. Ct. 161 (1991), which does question whether firearm ownership itself is a civil right. However, that court's affirmative answer was not the determinative factor in its final decision.
 Finally, we note that while Ramos held that some affirmative state action is required to "restore" a felon's civil rights, that case dealt with a Massachusetts misdemeanant who never had any rights taken away. This circuit has yet to decide what constitutes an affirmative restoration, or what quantum of rights need be restored to satisfy 18 U.S.C. § 921(a)(20). Because we base our decision today on Nazzaro's prior Massachusetts misdemeanors, we need not address the impact of Nazzaro's prior Massachusetts felonies.