**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 15-6589**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ARNOLD PAUL BURLESON,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro. Catherine C. Eagles,
District Judge. (1:13-cr-00070-CCE-1; 1:13-cv-01158-CCE-LPA)

_____

Argued: January 28, 2016            Decided: March 8, 2016

_____

Before GREGORY and HARRIS, Circuit Judges, and DAVIS, Senior
Circuit Judge.

_____

Reversed, vacated, and remanded by published opinion. Judge
Harris wrote the opinion, in which Judge Gregory and Senior
Judge Davis joined.

_____

**ARGUED:** Kevin F. King, COVINGTON & BURLING LLP, Washington,
D.C., for Appellant. Harry L. Hobgood, OFFICE OF THE UNITED
STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON
BRIEF:** Robert A. Long, Jr., Gregory L. Halperin, COVINGTON &
BURLING LLP, Washington, D.C., for Appellant. Ripley Rand,
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Greensboro, North Carolina, for Appellee.

_____

PAMELA HARRIS, Circuit Judge:

Arnold Paul Burleson was convicted of several North Carolina felony offenses between 1964 and 1985. Based on those convictions, he pled guilty in 2013 to possession of a firearm by a convicted felon, 18 U.S.C. § 922(g), and was sentenced to a fifteen-year mandatory minimum term of imprisonment under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Several months after his sentence was imposed, Burleson filed a 28 U.S.C. § 2255 motion asserting that he was actually innocent of the § 922(g) offense. According to Burleson, because his civil rights had been restored by North Carolina following his discharge from parole and long before his 2012 arrest, none of his prior state convictions was a predicate felony conviction for purposes of § 922(g) or § 924(e). We agree. And because Burleson pled guilty to a crime he could not commit, we vacate Burleson's conviction and sentence and remand with instructions to grant his § 2255 motion.

## I.

In September 2012, officers with the Sheriff's Department of Rowan County, North Carolina, responded to a report that an intoxicated elderly male with a handgun was committing an assault. When police arrived at the scene, they discovered Burleson and asked if he had a weapon. Burleson admitted that

2

he did and produced a Taurus .357 Magnum caliber handgun. Burleson was subsequently indicted by a federal grand jury, charged with possession of a firearm by a convicted felon, see 18 U.S.C. § 922(g), and as an armed career criminal, see 18 U.S.C. § 924(e).

In order to be a felon in possession under § 922(g), a defendant by definition must have an underlying felony conviction on his record. Section 922(g) defines a qualifying predicate conviction as one for "a crime punishable by imprisonment for a term exceeding one year." § 922(g)(1). Violations of § 922(g) ordinarily carry a maximum sentence of ten years' imprisonment and no mandatory minimum. 18 U.S.C. § 924(a)(2). But when a defendant has at least three previous convictions for certain "crime[s] punishable by imprisonment for a term exceeding one year," the ACCA calls for a mandatory minimum sentence of fifteen years. § 924(e).

Burleson and his trial counsel believed that Burleson had no sensible choice but to plead guilty to the § 922(g) offense, agreeing during the plea colloquy that Burleson had at least one prior conviction for a crime punishable by more than one year. Because Burleson's presentence investigation report indicated that he had five such convictions on his record, all from North Carolina and between the years 1964 and 1985, the ACCA's mandatory fifteen-year sentence also appeared to be triggered.

3

At sentencing, Burleson did not object to the treatment of his prior convictions as qualifying felony convictions under § 924(e), and the court was left with "no choice" but to impose the fifteen-year minimum sentence.  J.A. 54.  Burleson did not file a direct appeal.

A few months after the district court entered its judgment, however, Burleson filed a pro se motion under 28 U.S.C. § 2255, in which he asked the court to vacate his conviction because his prior North Carolina convictions do not qualify as predicate felony convictions under § 922(g).[1]  For the first time, Burleson pointed to the 1986 Firearms Owners' Protection Act, which defines the term "crime punishable by imprisonment for a term exceeding one year" as used in § 922(g) and § 924(e), and limits the type of convictions that may be used as predicates under those provisions.  See 18 U.S.C. § 921(a)(20).  Most important here, the Act excludes any conviction for which a person "has had civil rights restored," "unless such . . . restoration of

---

[1] Because Burleson failed to raise this issue on direct review, he is precluded from doing so in his § 2255 motion unless he can demonstrate either "cause" and actual "prejudice," or that he is "actually innocent."  See Bousley v. United States, 523 U.S. 614, 622 (1998).  Burleson's claim — that he legally and factually could not have committed a § 922(g) offense because he did not, at the time of the purported offense, have a predicate felony conviction on his record — falls squarely into the second category, see United States v. Adams, No. 13-7107, 2016 WL 682950, at *3-5 (4th Cir. Feb. 19, 2016), and the government does not argue otherwise.

4

civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." Id. In other words, if a felon has had his civil rights restored, then his prior felony conviction may no longer serve as a predicate for a violation of § 922(g) (or sentencing as an armed career criminal under § 924(e)) unless the state restricts his firearm rights as contemplated by § 921(a)(20).

That exclusion is critical here because, as Burleson explained in his § 2255 motion, his civil rights were fully restored by operation of state law in 1993, almost two decades before the 2012 arrest that led to his federal felon-in-possession charge under § 922(g). In March 1988, Burleson's unconditional discharge from parole on his last state conviction immediately restored his civil rights to vote, hold office, and serve on a jury. See N.C. Gen. Stat. §§ 13-1, 13-2. In March of 1993, after the expiration of a five-year waiting period, Burleson's firearm rights also were automatically and unconditionally restored by operation of North Carolina law. See id. § 14-415.1 (1975). So as of 1993, Burleson argued, his civil rights were restored, and "such restoration" did not provide, "expressly" or otherwise, for any restriction on his firearm rights.

The government did not disagree, or dispute that in 1993, § 921(a)(20) excluded Burleson's prior state convictions from

5

serving as predicates for a federal felon-in-possession charge. But according to the government, what matters under § 921(a)(20)'s "unless clause" — under which a conviction subject to civil rights restoration may continue to serve as a predicate if "such restoration" "expressly provides" for a restriction on firearm rights — is not whether Burleson's firearm rights were restricted at the time his civil rights were restored, but whether they were restricted at the time of his arrest on the § 922(g) charge. And at that time, the government explained, Burleson's firearm rights were indeed restricted, by a state law passed in 1995 — two years after full restoration of Burleson's civil rights — that prohibits all people with felony convictions from possessing firearms, regardless of whether they were convicted after the law's effective date or, like Burleson, before. See N.C. Gen. Stat. § 14-415.1(a) (1995). That retroactive 1995 statute, the government argued, activated the unless clause and effectively revived Burleson's prior convictions as predicates under § 922(g) and § 924(e).

The district court referred Burleson's § 2255 motion to a magistrate judge for a report and recommendation. Relying on two unpublished Fourth Circuit decisions analyzing the same 1995 North Carolina statute at issue here, the magistrate judge agreed with the government that in determining whether a restoration of civil rights provides for a firearm restriction

under § 921(a)(20) — and thus whether a prior conviction qualifies as a predicate under § 922(g) — a court should consider state firearm restrictions in effect at the time of the § 922(g) arrest, not the law in effect at the time of the civil rights restoration. Consequently, the magistrate judge recommended that Burleson's § 2255 motion be denied and that a certificate of appealability be denied as well.

Relying, like the magistrate judge, on our unpublished decisions, the district court adopted the magistrate judge's recommendation and denied Burleson's motion to vacate his conviction. But the district court issued a certificate of appealability, recognizing that "Burleson has made a substantial showing of the denial of a constitutional right." J.A. 134. Acknowledging support for Burleson's position in our published decision in United States v. Haynes, 961 F.2d 50 (4th Cir. 1992), as well as cases from other federal courts of appeals, the district court questioned "whether . . . Burleson's prior convictions provide a sufficient basis for his conviction under 18 U.S.C. § 922(g)(1)." J.A. 134.

This timely appeal followed.

## II.

As all parties agree, this case turns on our interpretation of 18 U.S.C. § 921(a)(20), which limits the class of prior

7

convictions that may serve as predicates for a federal felon-in-possession charge or a sentence as an armed career criminal.[2] We review the district court's interpretation of § 921(a)(20) de novo. See Haynes, 961 F.2d at 51.

**A.**

The Firearms Owners' Protection Act defines "crime punishable by imprisonment for a term exceeding one year" as it is used to identify predicate felony convictions for § 922(g)'s felon-in-possession offense, as well as for § 924(e)'s enhanced sentences. See § 921(a)(20). Under the Act, "[w]hat constitutes a conviction" for purposes of those provisions "shall be determined in accordance with the law of the jurisdiction in which the [prior criminal] proceedings were

---

[2] On appeal, Burleson's primary contention is that his trial counsel was constitutionally ineffective for failing to argue that he was actually innocent of the charged offense in light of § 921(a)(20). And ineffective assistance may well be an alternative basis for a grant of relief on Burleson's § 2255 motion. But as the government agrees, whether the claim is styled as one of ineffective assistance or actual innocence, it rises or falls on the merits of Burleson's statutory claim: that his prior North Carolina convictions are not predicates under § 922(g) and § 924(e) in light of the restoration exemption of § 921(a)(20). If that is correct, then Burleson cannot be guilty of a § 922(g) felon-in-possession charge, and his conviction and accompanying sentence are invalid. See Adams, 2016 WL 682950, at *5 (vacating § 922(g) conviction on collateral review because prior conviction did not qualify as predicate felony for felon-in-possession charge); Miller v. United States, 735 F.3d 141, 146–47 (4th Cir. 2013) (same).

8

held" — here, North Carolina.  Id.  And pivotal here, "[a]ny conviction . . . for which a person . . . has had civil rights restored shall not be considered a conviction . . . unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."  Id. (emphasis added).

In this circuit, it is settled that courts must consider the "whole of state law" — not just the face of a certificate granting the restoration of civil rights, but also relevant state statutes — to determine whether the defendant has had his civil rights "restored" and if a firearm restriction is applicable.  See United States v. McLean, 904 F.2d 216, 218 (4th Cir. 1990).  Here, nobody disputes that under the "whole of state law," Burleson's civil rights were indeed restored without any firearm restriction in 1993, many years before the 2012 arrest that gave rise to this case.  For Burleson, that is the end of the matter:  His 1993 restoration did not "expressly provide[]" for any restriction on firearm rights, and so under the plain language of § 921(a)(20), his prior convictions do not count as predicate convictions under § 922(g) or § 924(e).  But the government points to the 1995 amendment to North Carolina law that retroactively barred Burleson from possessing firearms, and argues that at the time of Burleson's 2012 arrest, state law did "expressly provide[]" that Burleson may not possess

9

firearms.  So this case boils down to one question:  In applying § 921(a)(20)'s "unless clause," do we look to state firearm restrictions in effect at the time Burleson's civil rights were restored, or to those in effect when Burleson was arrested on the § 922(g) charge?

We think the text of § 921(a)(20) unambiguously answers that question in Burleson's favor, pointing us to the law that governed at the time of restoration.  The key statutory phrase is "unless such . . . restoration . . . expressly provides" for a firearm restriction.  "Such restoration" plainly "refers back to the restoration of civil rights discussed in the previous clause."  United States v. Osborne, 262 F.3d 486, 491 (5th Cir. 2001) (holding that law at time of restoration governs § 921(a)(20) inquiry).  By stating that firearm restrictions must be linked to the restoration itself, § 921(a)(20) necessarily excludes state-law restrictions enacted after that restoration has been effected.  "[I]t cannot be that 'such . . . restoration' includes laws that had not been passed at the time the restoration occurred."  Id.  And that reading is confirmed by use of the present tense in the phrase "expressly provides," the "plain meaning" of which is that courts must determine the effect of a restoration of civil rights "at the time it is granted and cannot consider whether the defendant's civil rights later were limited or expanded."  See United States v. Cardwell,

10

967 F.2d 1349, 1350–51 (9th Cir. 1992) (holding that law at time of restoration governs § 921(a)(20) inquiry).

Congress could have enacted a statute effectuating the government's position, providing that restoration of a defendant's civil rights precludes use of a prior conviction "unless current state law expressly provides" for a firearm restriction. But that is not what the statute says. See Osborne, 262 F.3d at 491 (statute "does not read 'unless state law expressly provides that the person may not possess firearms'"). Instead, Congress specified that "such restoration" must "expressly provide[]" for a firearm restriction, and that language makes it clear that post-restoration enactments by the convicting state cannot restore a previously negated predicate conviction for purposes of § 922(g) and § 924(e).

The government does not attempt to reconcile its position with the text of the unless clause. Instead, it points to our cases holding that courts must look to the "whole of state law" to determine if a felon's civil rights have been restored fully under § 921(a)(20), see McLean, 904 F.2d at 218, and argues that the "whole of state law" includes the 1995 North Carolina firearm restriction that was in effect when Burleson was arrested in 2012. But that conflates two very different questions. The first is whether courts may consult not only the

11

face of an individualized restoration certificate but also the operation of general state statutes in deciding if civil rights have been "restored" and if a firearm restriction applies. As noted above, our court has answered that question in the affirmative, allowing reference to the "whole of state law" in applying § 921(a)(20). But that does not resolve the separate question presented today: whether the state statutes that govern are those in effect at the time civil rights are restored, or those in effect at the time of a subsequent § 922(g) arrest.

The Courts of Appeals for the Fifth, Eighth, Ninth, and Tenth Circuits have considered that question and come to the same conclusion as ours, holding that the text of § 921(a)(20) unambiguously requires courts to "look to the law at the time a defendant's civil rights were restored, without reference to later changes in the law." Osborne, 262 F.3d at 491; see United States v. Norman, 129 F.3d 1393, 1397 (10th Cir. 1997); United States v. Wind, 986 F.2d 1248, 1251 (8th Cir. 1993); Cardwell, 967 F.2d at 1351. Only the Seventh Circuit appears once to have reached a contrary conclusion, see Melvin v. United States, 78 F.3d 327, 330 (7th Cir. 1996), but in a more recent case that court, too, applied "state law and practice at the time of the asserted restoration of civil rights" to the § 921(a)(20) inquiry, see United States v. Adams, 698 F.3d 965, 968–69 (7th Cir. 2012). Application of the law in effect on the date of a

12

person's § 922(g) arrest may be "problematic," the court concluded, when, as here, "a state restores a felon's civil rights and then changes its law after the restoration." Id. at 969. We think so, too. North Carolina is entitled, of course, to pass retroactive legislation that alters a felon's right to possess firearms under state law. But under the plain text of § 921(a)(20), once a conviction for which rights have been restored ceases to count as a predicate for federal law purposes, a subsequent change in state law will not revive it.

**B.**

The magistrate judge and district court reached a different conclusion, in reliance on a pair of unpublished Fourth Circuit decisions taking the government's view of § 921(a)(20). But we have published precedent that directly addresses the question at issue here, and it adopts Burleson's reading of the unless clause, not the government's.

In our 1992 decision in United States v. Haynes, we encountered the same temporal sequence we confront today: A defendant's civil rights were fully restored after he was discharged from parole on a state felony conviction, three years later West Virginia passed a statute barring previously convicted felons from carrying firearms, and one year after that the defendant was discovered in possession of a firearm. See 961 F.2d at 51–52. As here, the government argued that the

13

defendant's prior felony conviction qualified as a predicate offense under § 922(g) because at the time of his arrest on that charge, his firearm rights were restricted by operation of the post-restoration state statute.  Id.  But we rejected that argument because "at the time that [the defendant's] civil rights were restored, it was not against West Virginia law for a convicted felon to possess a firearm."  Id. at 53.  West Virginia's "subsequent enactment of [a firearm restriction]," we reasoned, "does not alter the fact that section 921(a)(20) excluded the defendant from the definition of a convicted felon for purposes of section 922(g)(1)."  Id. at 52–53.

Although Haynes would appear to foreclose the government's argument, the government contends — and the district court agreed — that the case is distinguishable.  According to the government, Haynes rests not on an interpretation of § 921(a)(20)'s unless clause but instead on retroactivity concerns:  West Virginia's laws are presumed to operate prospectively only, and so relying on a post-restoration enactment to limit a defendant's firearm rights would have amounted to impermissible retroactivity.  In fairness, that characterization is not entirely without support in our case law.  The government has uncovered a parenthetical in a footnote that describes Haynes as turning on West Virginia's presumption against retroactivity.  See United States v. O'Neal, 180 F.3d

14

115, 121 n.6 (4th Cir. 1999). And there are the two unpublished opinions on which the magistrate judge and district court relied, both of which involve the same 1995 North Carolina statutory restriction at issue in this case, and both of which adopt the government's view of § 921(a)(20) without even mentioning Haynes. See United States v. Hairston, 364 F. App'x 11, 16–17 (4th Cir. 2010) (convictions formerly excluded as predicates under § 921(a)(20) become predicates upon enactment of 1995 firearm restrictions); United States v. Brady, 438 F. App'x 191, 196 (4th Cir. 2011) (same).

To the extent there has been a lack of clarity as to the import of our decision in Haynes, we can resolve it now.[3] As we read Haynes, it is a straightforward statutory interpretation case, establishing that under § 921(a)(20)'s unless clause, "we refer to the whole of [state] law in effect at the time that [the defendant's] civil rights were restored." 961 F.2d at 53 (emphasis added). Haynes does acknowledge West Virginia's

---

[3] Our characterization of Haynes in O'Neal is not the law of the circuit and does not bind this court. See United States v. Gowing, 683 F.3d 406, 408–09 (2d Cir. 2012) (parenthetical in a footnote interpreting statute is a "stray remark[]" that does not bind court); Nicor Supply Ships Assocs. v. Gen. Motors Corp., 876 F.2d 501, 506 (5th Cir. 1989) ("parenthetical description of another case, contained in a footnote," is "obiter dicta, not precedent" and "do[es] not bind [the court] as the law of the circuit"). Nor, of course, do our decisions in Hairston and Brady, which are unpublished and therefore have no precedential effect in this circuit. Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir. 1996).

15

presumption against retroactivity, but only in the course of declining to rule on the defendant's alternative argument that the presumption would be violated by application of a post-restoration firearms restriction — an argument rendered moot by the court's holding that regardless of whether it was retroactive, a post-restoration firearms restriction would not revive a prior conviction under § 921(a)(20).  Id. at 52–53.

We think the reasoning of Haynes is clear enough.  But were there any doubt, it is worth noting that the government's reading would render all but a few sentences of the opinion meaningless.  It also would surprise our sister circuits, which have relied on Haynes as among the cases holding that courts must look to the state law in effect at the time a defendant's civil rights are restored in applying § 921(a)(20)'s unless clause.  See Osborne, 262 F.3d at 491 & nn.18, 20 (citing Haynes); Norman, 129 F.3d at 1397 & n.4 (same); Cardwell, 967 F.2d at 1351 (same).

In short, our decision today is compelled not only by the text of § 921(a)(20) but also by this court's prior decision in Haynes.  Under the straightforward text of the unless clause and under Haynes, the result is the same:  Burleson's prior North Carolina felony convictions cannot serve as predicates for his felon-in-possession charge under § 922(g) or for his sentence as an armed career criminal under § 924(e).  For these federal-law

16

purposes, North Carolina's post-restoration change in state law is of no moment.[4]

## III.

Because Burleson did not have a qualifying predicate conviction on his record at the time of the charged offense, it was not illegal under § 922(g) for him to possess a firearm. He cannot remain convicted of a crime of which he is actually innocent. We therefore reverse the judgment of the district court denying relief, vacate Burleson's § 922(g) conviction and attendant sentence, and remand to the district court with instructions to grant Burleson's § 2255 motion.

REVERSED, VACATED, AND REMANDED

---

[4] Whether Burleson can be charged under state law is a different question on which we express no view. We note that North Carolina originally charged Burleson with a state-law felon-in-possession offense, see N.C. Gen. Stat. § 14-415.1, but dismissed that charge upon the filing of the federal indictment.

17